UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 5:26-cv-00798-SSS-BFM | Date | February 20, 2026 |
|---|---|---|---|
| Title | *Rohit Kumar v. Ernesto Santacruz Jr. et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 2]**

Before the Court is Petitioner Rohit Kumar's Ex Parte Application for a Temporary Restraining Order. [Dkt. No. 2, "Application"]. Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS** Petitioner's Application.

## I. BACKGROUND

Petitioner Rohit Kumar is a citizen and national of India who is currently detained at the Desert View Facility in California in the custody of the Department of Homeland Security. [Dkt. No. 1, "Petition" ¶¶ 31, 20]. Petitioner last entered the United States near Otay Mesa, California, on or about November 2, 2024. After being processed by immigration authorities, he was released on or about January 5, 2025, and remained at liberty in the community. [*Id.* ¶ 16].

While released, Petitioner complied with the conditions of supervision and pursued applications for asylum, withholding of removal, and protection under the Convention Against Torture. [*Id.* ¶¶ 16, 22]. On June 4, 2025, Petitioner appeared

for a scheduled appointment at an ICE office in San Bernardino, at which time ICE officers took him into custody, resulting in his re-detention. [*Id.* ¶¶ 2, 18].

The Petition alleges that prior to re-detaining Petitioner, Respondents did not provide written notice explaining the basis for revoking his release and did not conduct a hearing or individualized assessment of flight risk or danger to the community. [*Id.* ¶ 19]. Petitioner further alleges that he has no criminal history, has complied with immigration authorities, and does not pose a danger to the community or a risk of flight. [*Id.* ¶¶ 15, 22].

Petitioner sought custody review in immigration court. He withdrew a bond request on June 25, 2025, after the immigration judge indicated a lack of jurisdiction, and another on December 8, 2025, due to a procedural deficiency. Petitioner ultimately received a bond hearing on February 18, 2026, at which the immigration judge denied release. [*Id.* ¶¶ 7, 17]. Petitioner remains detained while his removal proceedings are pending, and his individual hearing on his applications for relief is scheduled for February 27, 2026. [*Id.* ¶ 13].

## II.  LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) that he is "likely to succeed on the merits" of his underlying claim, (2) that he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in his favor," and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Under the sliding scale approach, a petitioner is entitled to a TRO if he has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his] favor." *All. for the Wild Rockies*, 632 F.3d at 1131 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

## III.  DISCUSSION

### A.  Likelihood of Success on the Merits

Along with asserting statutory claims, Petitioner argues that his re-detention after release violated his procedural due process rights because he had a protected liberty interest in remaining free yet was re-detained without notice or a pre-deprivation hearing. [Petition ¶¶ 58–59]. Respondents argue that Petitioner's February 18, 2026, bond hearing moots the Petition and the Application because his receiving of the bond hearing essentially cures any alleged due process violations resulting from his re-detention, if any. [Opp. at 3–6]. The Court finds that Petitioner is likely to succeed on the merits of his procedural due process claim, notwithstanding his post-detention bond hearing.

Due process claims proceed in two steps, first, determining if the Due Process Clause protects a Petitioner's liberty interest, and second, determining what procedures a petitioner is entitled to protect that right.

Petitioner's right to remain out on bond is a liberty interest protected by the Due Process Clause. Courts in this circuit have routinely held that noncitizens on bond have a "protected liberty interest in remaining out of custody." *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) (collecting cases); *see also Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (noncitizens protected by Due Process Clause). In other words, though the government may have discretion over their release, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." *Pinchi*, 2025 WL 2084921, at *3 (citation modified).

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under *Mathews v. Eldridge*, the Court considers three factors.

>First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976).

### 1. Petitioner's private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). So, it is unsurprising that "the Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases) (citation modified).

As such, because Petitioner was allowed to remain at liberty after being released, [Petition ¶ 6], he "took with [him] a liberty interest which is entitled to the full protections of the Due Process Clause." *See Rodriguez-Flores v. Semaia*, No. CV 25-6900-JGB-JCx, 2025 WL 2684181, at *4 (C.D. Cal. Aug. 14, 2025). As such, the first *Matthews* factor favors Petitioner.

### 2. Risk of erroneous deprivation

The second *Mathews* factor examines "the risk of an erroneous deprivation of [Petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is high here.

"[I]t is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing," as such a hearing provides a crucial "opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F.

Supp. 3d at 1035.  "The government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing."  *Duong v. Kaiser*, 800 F. Supp. 3d 1030, 1040–41 (N.D. Cal. 2025).

      Particularly here, where Petitioner was previously found not to pose a flight risk or danger to the community, as evidenced by his initial release, and he proceeded to comply with all the conditions of his release and voluntarily appear for a scheduled ICE appointment [Petition ¶¶ 2, 16, 18, 22], an arrest without a prompt or contemporaneous hearing or other procedural safeguard poses a high risk of error, with substantial harm.  *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1035 (where petitioner "was detained after more than two years of attending every required immigration hearing and despite her deep community ties and lack of any criminal record," there was "a significant risk that even the two-day curtailment of liberty that [Petitioner] already suffered upon her re-detention by ICE was not justified by any valid interest"); *Rivera Larios v. Albarran*, No. 25-CV-08799-AMO, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard.").

      Respondents' arguments also miss the mark in characterizing Petitioner's claim and requested relief.  As discussed above, there is a marked difference between a pre- and post-deprivation remedy.  Petitioner is not so much contesting the IJ's bond hearing denial decision after his initial apprehension but is instead challenging Respondents' decision to continue to detain him without having conducted a pre-deprivation hearing.  [*See* Petition ¶¶ 59–66].

      In any case, even if Petitioner may request a bond hearing while detained, and in this case did so, "such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."  *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); *see also Domingo v. Kaiser*, No. 25-CV-05893 -RFL, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").

### 3. Government's interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Respondents have articulated no specific interest in conducting a detention hearing only after detaining Petitioner, instead of before. They markedly do not cite to any changes in circumstance or any events that would have signaled Petitioner's danger to the community or flight risk *before* they apprehended Petitioner, after having initially released him under conditions.

Additionally, as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. *Fernández López v. Wofford*, No. 25-CV-01226-KES-SKO, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("In immigration court, custody hearings are routine and impose a minimal cost. If the government wishes to re-arrest petitioner at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (citation modified)); *Pinchi*, 792 F. Supp. 3d at 1036 ("[D]ue process requires the government to identify some interest beyond its own administrative practices to justify depriving an individual of her liberty without any pre-deprivation protections. Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."); *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *7–8 (N.D. Cal. June 14, 2025) ("[T]he government's interest in re-detaining Petitioner-Plaintiff without a hearing is low, particularly in light of the fact that Petitioner-Plaintiff has long complied with his reporting requirements." (citation modified)).

### B. Likelihood of Irreparable Harm

Petitioner currently suffers irreparable harm because Petitioner has likely been detained in violation of his constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). This factor thus favors Petitioner.

### C. Balance of Hardships and Public Interest

The balance of the hardships tips strongly in Petitioner's favor because he will suffer great hardship if this Court were to deny the TRO and Preliminary Injunction. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (requiring the balance of hardships to "tip sharply" in the moving party's favor).

Where the government is the opposing party, balance of equities and public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court evaluates whether any significant "public consequences" would result from issuing the preliminary injunction. *Winter*, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Here, in the absence of an injunction, Petitioner is and will continue to experience detention that resulted from a deprivation of his due process rights. Therefore, the Court, like many courts across the country, finds that the only reasonable relief is Petitioner's release. *See Grigorian*, 2025 WL 2604573, at *10 (collecting cases).

## IV. CONCLUSION

For the reasons described above, the Court **GRANTS** Petitioner's Application for a TRO. [Dkt. No. 2]. The Court **ORDERS** Respondents to immediately release Petitioner from their custody.

Respondents are **ENJOINED AND RESTRAINED** from again detaining Petitioner without notice and a pre-detention hearing where the government bears the burden of proving, by clear and convincing evidence, that the circumstances have changed as to his danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent those harms. *Pinchi*, 2025 WL 2084921, at *7.

Respondents are **ORDERED** to file a status report certifying compliance with the above order of release within three (3) days from the date of this Order.

The Court directs the parties to present all subsequent matters in this case to the Magistrate Judge.

    **IT IS SO ORDERED.**